■ BRANDLE MEADOWS, LLC, Appellant, v PETER BETTE et
al., Respondents. [923 NYS2d 294]—

Egan Jr., J. Appeal from an order of the Supreme Court
(Lynch, J.), entered June 1, 2010 in Albany County, which
granted defendants' motion to, among other things, compel
arbitration between the parties.

In November 2007, defendant Bette & Cring, LLC was
retained by plaintiff to serve as the construction manager for
the Brandle Meadows-Senior Condominium Community project
in the Village of Altamont, Albany County. Pursuant to the
contract, Bette & Cring would periodically submit applications
for payment to plaintiff for costs it incurred on the project.
Ultimately, a dispute arose between the parties over what
plaintiff believed to be discrepancies in the payment requisi-
tions submitted by Bette & Cring and, in August 2009, plaintiff
terminated its contract with Bette & Cring. Bette & Cring then
filed a mechanics' lien against plaintiff in the amount of
$2,094,054.02 and, pursuant to the parties' contract, this
dispute was referred to arbitration on consent of the parties.

In September 2009, plaintiff commenced the instant action al-
leging extortion, tortious interference with contract and busi-
ness disparagement and defamation.* Subsequently, defendants
served plaintiff with a demand to permit the claim to proceed to

* The complaint also alleged a fourth cause of action for punitive damages;
however, as Supreme Court noted in its order, such a claim does not stand as a

arbitration in accordance with the contract, which request plaintiff denied. Defendants thereafter made application to Supreme Court for an order pursuant to CPLR 7503 (a) staying the action and compelling arbitration between the parties. Supreme Court granted defendants' motion, finding that there was a reasonable relationship between plaintiff's intentional tort claims and the underlying contract, and that the focal point of the dispute was payment. We agree and affirm.

It is "[t]he policy of this State . . . to favor and encourage arbitration as a means of expediting the resolution of disputes and conserving judicial resources" (*Szabados v Pepsi-Cola Bottling Co. of N.Y.*, 174 AD2d 342, 343 [1991] [internal quotation marks and citation omitted]). That policy "dictate[s] that incidental tort claims which are integrally linked to an arbitrable dispute be submitted for resolution in arbitration" (*id.*; *see Hirschfeld Prods. v Mirvish*, 218 AD2d 567, 568 [1995], *affd* 88 NY2d 1054 [1996]). "[I]t is for the courts to make the initial determination as to whether the dispute is arbitrable" (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d 91, 95 [1975]; *see Matter of Massena Cent. School Dist. [Massena Confederated School Employees' Assn., NYSUT, AFL-CIO]*, 82 AD3d 1312, 1314 [2011]; *Matter of Wiederspiel [Carstens]*, 36 AD3d 971, 973 [2007]), and "[o]nce it appears that there is . . . a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended" (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d at 96; *see Matter of Peters v Union-Endicott Cent. School Dist.*, 77 AD3d 1236, 1240-1241 [2010]). To that end, exclusion of a substantive issue from arbitration "generally requires specific enumeration in the arbitration clause itself" (*Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308 [1984]), and "a broad arbitration clause in an agreement [generally] survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder, irrespective of whether the termination and discharge resulted from the natural expiration of the term of the agreement" (*Matter of Primex Intl. Corp. v Wal-Mart Stores*, 89 NY2d 594, 598-599 [1997]; *accord Matter of Poly-Pak Indus. v Collegiate Stores Corp.*, 269 AD2d 130, 131 [2000]).

Here, the contract provides that "[a]ny [c]laim arising out of or related to the [c]ontract, except [c]laims relating to aesthetic

---

distinct cause of action (*see Rochester Linoleum & Carpet Ctr., Inc. v Cassin*, 61 AD3d 1201, 1204 [2009]).

effect and except those waived [herein], shall, after decision by the [a]rchitect or 30 days after submission of the [c]laim to the [a]rchitect, be subject to arbitration." The contract further defines "claim" to include "disputes and matters in question between [plaintiff] and [Bette & Cring] arising out of or relating to the [c]ontract." In its complaint, plaintiff alleged that after the payment dispute arose, defendants contacted the Town of Guilderland Building Department and falsely asserted that construction on the project had to be stopped and certificates of occupancy could not be issued because of nonpayment, and that defendants further contacted homeowners at the development and falsely asserted that their warranties would be canceled due to plaintiff's nonpayment. Plaintiff also alleged that, in violation of the contract provisions, defendants contacted subcontractors who had worked on the project and told them not to work for plaintiff, and that defendants provided false information to a local newspaper that plaintiff failed to make payments under the contract and would not be able to sell units at the project for a long time. In light of the broad arbitration provision, which provides for arbitration of "[a]ny [c]laim" arising out of or related to the contract between the parties, we find that a "reasonable relationship" exists between the general subject matter of the underlying contract dispute (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am.*, 37 NY2d at 96)—which has already been referred to arbitration—and plaintiff's incidental tort claims in the instant action, such that Supreme Court did not err in finding that these tort claims are subject to arbitration.

Spain, J.P., Lahtinen, Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.