■ JETBLUE AIRWAYS CORPORATION, Appellant-Respondent, v ROBERT M. STEPHENSON et al., Respondents-Appellants. [931 NYS2d 284]—

Respondents are counsel to 728 unnamed current JetBlue pilots and 18 named former JetBlue pilots. All of the pilots are either captains or first officers. Each of the pilots entered into his or her own employment agreement with JetBlue. Each agreement is standardized and there is no dispute that the relevant provisions at issue are identical in each pilot's respective agreement. As is relevant to this dispute, each agreement contained a section 3A, entitled "Base Salary," which provided, in pertinent part: "If at any time during the life of this Agreement the Airline increases the base salary it pays to newly-hired pilots performing duties either as Captains or First Officers, the Pilot's base salary shall be adjusted by the same percentage as the increase in base salary." The agreements also contained an arbitration clause, which provided, in pertinent part: "[I]n the event of any difference of opinion or dispute between the Pilot and the Airline with respect to the construction or interpretation of this Agreement or the alleged breach thereof which cannot be settled amicably by agreement of the parties . . . , such dispute shall be submitted to and determined by arbitration by a single arbitrator in the city where the Pilot's base of operation is located in accordance with the rules of the American Arbitration Association."

The pilots contend that JetBlue breached section 3A of their employment agreements. Respondents (hereinafter referred to as the pilots) filed a single demand for arbitration with the AAA on behalf of all of the pilots.* On June 22, 2010, JetBlue commenced this proceeding seeking: (1) to compel individual arbitra-

---

* Respondents asserted in the arbitration demand that they were not naming pilots still working for the company because those pilots had reason to

tion pursuant to the FAA (9 USC § 1 *et seq.*) or, alternatively, pursuant to CPLR 7503; (2) a preliminary injunction pursuant to CPLR 6301 and 7502 (c); (3) a stay of arbitration pursuant to CPLR 7503; and (4) an order sealing all filings and court records in connection with the proceedings before the court. JetBlue argued that each pilot had entered into an individualized employment agreement with JetBlue, which by its plain language limited arbitration to the signatory pilot only, before a single arbitrator to be chosen by the parties in the locale where the pilot resided.

The pilots moved to dismiss the petition. They argued that the employment agreements could not be read to prohibit collective arbitration. They asserted that a single breach of contract issue applied identically to all, and that it would be wasteful to require hundreds of separate arbitration proceedings to resolve an issue that could be disposed of in just one proceeding. The pilots also argued that the FAA did not apply, as their job description fell under an exemption in section 1 of the act for "any other class of workers engaged in foreign or interstate commerce" (9 USC § 1).

The IAS court held that the FAA governed the dispute, and remanded the matter to the AAA to determine whether the employment agreements permitted collective arbitration under the AAA rules, New York law and the FAA. The IAS court found the FAA applied because, while JetBlue transported both passengers and cargo, the facts demonstrated that JetBlue "primarily" moved passengers. The court noted that various courts had interpreted the act to exempt only workers primarily engaged in the transportation of goods. The court further found that the FAA governed the employment agreements as to procedure, and that New York law was the substantive law to be applied. The court denied JetBlue's petition for a preliminary injunction and a stay of collective arbitration, as well as to compel individual arbitrations, based on its finding that the availability of collective arbitration was a procedural issue for the arbitrator to determine, not an issue of arbitratibility for the court to decide.

It must first be determined whether the FAA applies here. That statute expressly exempts from its purview the "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" (9 USC § 1). Although the United States Supreme Court has not directly interpreted the meaning of this provision, it has noted

fear that JetBlue would intimidate them and retaliate against them because of their claims.

that several courts of appeal have defined "workers engaged in foreign or interstate commerce" as "transportation workers" who are "actually engaged in the movement of goods in interstate commerce" (*Circuit City Stores, Inc. v Adams*, 532 US 105, 112 [2001], quoting *Cole v Burns Intl. Sec. Servs.*, 105 F3d 1465, 1471 [DC Cir 1997]). Indeed, the Supreme Court in *Circuit City* explained that the exemption of certain transportation workers demonstrated Congress' concern with those workers who played a "necessary role in the free flow of *goods*" (*id.* at 121 [emphasis added]).

In arguing that the FAA does not apply, the pilots rely on *Lepera v ITT Corp.* (1997 WL 535165, 1997 US Dist LEXIS 12328 [ED Pa 1997]). In that case, the district court found that a pilot whose primary responsibility was to transport corporate executives in a private jet was not subject to the act. The court stated that "[i]t is simply nonsensical to exclude from coverage those workers engaged in the direct transportation of goods, but not those engaged in the direct transportation of persons" (1997 WL 535165, *7, 1997 US Dist LEXIS 12328, *20). However, in *Kowalewski v Samandarov* (590 F Supp 2d 477 [SD NY 2008]), a case decided later, after the Supreme Court's holding in *Circuit City*, car service drivers were not deemed to be exempt from the FAA. In that case, the drivers argued that they were exempt because they transported passengers only. The district court noted the *Circuit City* Court's emphasis on goods in determining what types of workers are exempt from the act, and found that the focus should be placed on the primary purpose of the industry in which the worker toils. Since the primary purpose of the car service industry did not involve the movement of goods, the court found that such drivers were not exempt from the act (590 F Supp 2d at 483-485).

We agree with the IAS court that *Kowalewski* is much more persuasive authority than *Lepera*. Although the latter case expressly found that the exemption applied to pilots who, like the JetBlue pilots here, primarily carried passengers, it was decided before *Circuit City*. Accordingly, the *Lepera* court did not, as the *Kowalewski* court did, have the benefit of the Supreme Court's teaching that the exemption applied to employees involved primarily in the transportation of goods. Since the pilots in this case are engaged in an industry which is primarily concerned with the transportation of passengers, we find that the FAA applies to this dispute.

Next we must consider whether the court or the arbitrators will decide if the arbitrations must be individual or may be held jointly. New York State courts have long held that all issues sur-

rounding a dispute are generally reserved for the arbitrators. Only three threshold questions may be decided by a court. Those are (1) whether the agreement to arbitrate is valid; (2) whether the parties have complied with the agreement; and (3) whether the claim is timely (*see Matter of Smith Barney, Harris Upham & Co. v Luckie*, 85 NY2d 193, 201-202 [1995]; *Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 6 [1980]; *Matter of Bunzl [Battanta]*, 224 AD2d 245 [1996]). Similarly, the United States Supreme Court recently reiterated that "[i]n certain contexts, it is appropriate to presume that parties that enter into an arbitration agreement implicitly authorize the arbitrator to adopt such procedures as are necessary to give effect to the parties' agreement. Thus, . . . procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide" (*Stolt-Nielsen S.A. v AnimalFeeds Int'l Corp.*, 559 US —, —, 130 S Ct 1758, 1775 [2010] [internal quotation marks omitted]).

Who should decide whether the employment agreements permitted collective, or joint, arbitration, depends on whether it is a procedural or "gateway" issue. If it is a procedural issue, the arbitrator should decide. On the other hand, if it is a "gateway" question, going to arbitrability, a court should decide (*see Howsam v Dean Witter Reynolds, Inc.*, 537 US 79, 83-84 [2002]). In *Green Tree Financial Corp. v Bazzle* (539 US 444 [2003]), a four-justice plurality of the United States Supreme Court held that where the question is whether collective arbitration is permissible, it is a procedural matter and thus for the arbitrators. In *Bazzle*, the respondents secured a large arbitration award in a proceeding that had been certified by the court as a class arbitration. The petitioner contended that the arbitration agreement expressly prohibited class arbitrations (539 US at 449). The Supreme Court plurality rejected the petitioner's construction of the arbitration clause, but remanded the question to the arbitrator to determine whether the parties' agreement permitted class arbitration (*id.* at 451-452). The plurality noted that the agreement broadly called for "all disputes" relating to the contract to be arbitrated (*id.* at 451), and further stated:

"In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of clear and unmistakable evidence to the contrary). These limited instances typically involve matters of a kind that contracting parties would likely have expected a court to decide. They include certain gateway matters, such as whether the parties have a valid arbitration

agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy . . .

"The question here—whether the contracts forbid class arbitration—does not fall into this narrow exception. It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties . . . Rather the relevant question here is what *kind of arbitration proceeding* the parties agreed to. That question . . . concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question" (*id.* at 452-453 [internal quotation marks, citations and brackets omitted]).

JetBlue asserts that because only a plurality of the Supreme Court decided *Bazzle*, it does not control. Rather, JetBlue relies on the Supreme Court's discussion in *Stolt-Nielsen* (559 US at —, 130 S Ct at 1758). In that case, the Supreme Court reviewed an arbitration panel's decision that an agreement to arbitrate between the parties contemplated class arbitration, even though the agreement was silent on that point. The Supreme Court, in discussing the propriety of the arbitrators' having considered the issue in the first place, called into question the extent to which both parties, in maintaining that the question was for the arbitrators, should rely on *Bazzle*. The *Stolt-Nielsen* Court emphasized that only a plurality of the Court in *Bazzle* supported the proposition that the question of whether an arbitration agreement permits class arbitration is for the arbitrator, and not the court, to decide. However, the Supreme Court in *Stolt-Nielsen* ultimately avoided answering the question, noting that the parties had stipulated that the arbitrators should make that determination (559 US at —, 130 S Ct at 1770-1772).

The *Stolt-Nielsen* Court did, however, decide that the arbitrators in that case incorrectly construed the parties' agreement as permitting class arbitration. The Court stated that "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator" (559 US at —, 130 S Ct at 1775). The Supreme Court further stated that "fundamental changes [are] brought about by the shift from bilateral arbitration to class-action arbitration" (559 US at —, 130 S Ct at 1776). These include that the latter "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties," that the AAA's Class Rules

expressly eliminate the presumption of privacy and confidentiality that normally applies in bilateral arbitration, and that the award in class-action arbitrations "no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well" (559 US at —, 130 S Ct at 1776).

While there is no binding precedent from the United States Supreme Court holding that an arbitrator should decide whether collective arbitration is permissible, there is likewise no authority requiring a court to decide the question as a "gateway" issue. As noted above, the category of gateway issues is a narrow one limited to questions that involve the enforceability of an arbitration agreement, its applicability to a particular dispute, the parties' compliance with the agreement and the timeliness of a claim (*Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 6 [1980], *supra*). No such threshold question is involved in this dispute. Instead, the issue here is a procedural one that has "grow[n] out of the dispute" (*Stolt-Nielsen*, 559 US at —, 130 S Ct at 1775 [internal quotation marks omitted]), since it concerns not whether the parties agreed to arbitrate the dispute in question, but the manner in which the arbitration should proceed.

JetBlue argues that, just as the Supreme Court in *Stolt-Nielsen* found that the agreement at issue there could not be construed by any reasonable arbitrator to permit class arbitration, here we should declare that the agreement does not permit *collective* arbitration. The pilots counter by arguing that *Stolt-Nielsen* does not control this case because class arbitration, which they are not seeking, is unique. They characterize their demand as one for joint, or collective, arbitration, which they maintain is far different than class arbitration. Indeed, they claim that the procedural mechanism they seek contains none of the "fundamental changes" from bilateral arbitration identified by the Court in *Stolt-Nielsen*.

The pilots are correct. Class arbitration and the collective proceeding that the pilots have demanded here are so fundamentally different that *Stolt-Nielsen* does not dictate the result. In the collective arbitration sought here, unlike in a class arbitration, all of the affected pilots are actual parties. Further, in a class proceeding, common issues need only "predominate" over issues that are unique to individual members; identity of issues is not required (*Friar v Vanguard Holding Corp.*, 78 AD2d 83, 98 [1980]). Here, there is only one straightforward question that needs to be answered by the arbitration panel, and its disposition will equally affect each and every pilot. Thus, because

the type of proceeding demanded by the pilots is not, like a class proceeding, so fundamentally different from an ordinary arbitration, we cannot, unlike the Supreme Court in *Stolt-Nielsen*, definitively say that the parties did not agree to it. Instead, the arbitrators should decide the issue, as well as whether the AAA Rules permit collective, or joint, arbitration, in the first place.

Finally, we do not agree with JetBlue that a court should decide whether the collective arbitration sought by the pilots violated the forum selection clause in their employment agreements. That provision requires that arbitration take place before "a single arbitrator in the city where the Pilot's base of operations is located." The pilots persuasively argue that they may unilaterally waive the forum clause because it was designed exclusively for their benefit. Indeed, the pilots assert that the clause was included in the agreements to conform with the law of the various states where JetBlue bases its operations. Certain of those states require employees to be given the option of arbitrating disputes in a local forum so as to balance the playing field with their employer. JetBlue does not deny that the forum clause was negotiated for this purpose only. Thus, we reject its position that it could not be unilaterally waived by the pilots and that it is a gateway issue that the court should have considered.

We have considered JetBlue's remaining contentions and find them unavailing. Concur—Mazzarelli, J.P., Catterson, Manzanet-Daniels and Román, JJ. **[Prior Case History: 31 Misc 3d 1241(A), 2010 NY Slip Op 52405(U).]**

