Defendant is the owner of the former Loew’s Paradise Movie Theater in the Bronx. Plaintiff Dabriel, Inc., is the current tenant of the theater. Plaintiff Gabriel Boter is Dabriel’s principal. In or about 2003, an entity controlled by Boter, Paradise Theater Productions (Productions), entered into a lease with defendant for the premises commencing on March 1, 2004 (the 2003 lease). The 2003 lease provided that defendant would perform certain work at the premises, including, but not limited to, improvements to the theater’s lighting, sound system, stage, and marquee (the Landlord’s Work), and that Productions would pay $1,050,000 for the Landlord’s Work in the form of additional rent.
Notwithstanding Productions’ position that defendant never completed the Landlord’s Work, Productions paid defendant over $525,000 in rent, and, on October 28, 2005, Boter signed *518 an agreement formally accepting delivery of the premises “in the condition required by the lease, including but not limited to completion” of the Landlord’s Work. Ultimately, however, Productions experienced financial difficulties in operating the theater, and negotiated an assignment of the 2003 lease to nonparty Mossberg Credit Services, Inc. (Mossberg). Defendant consented to the assignment of the lease, which took effect on February 12, 2007.
In April 2008, Mossberg commenced an action in Supreme Court, New York County, against defendant, Boter, and Productions. Mossberg claimed, inter alia, that the Landlord’s Work had never been performed. After Mossberg stopped paying rent, defendant commenced a nonpayment proceeding against Mossberg in Civil Court, Bronx County. On or about July 28, 2009, Boter, Productions, defendant and Mossberg entered into a global settlement agreement whereby they exchanged general releases of all claims against one another, and the premises were returned to the possession of defendant.
On September 16, 2009, Boter, through Dabriel, a separate entity from Productions, entered into a new lease agreement for the theater (2009 lease). The 2009 lease provided, in pertinent part: “No Representations by Owner: 20. Neither [defendant] nor [defendant]’s agent have made any representations with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the demised premises, except as expressly set forth.” The 2009 lease also provided that Dabriel would execute two promissory notes, pursuant to which they promised to pay defendant $1,464,582.20 over two overlapping repayment periods. Boter personally guaranteed the notes. The guarantees identified the loans as having been made “to assist [Dabriel] in the leasing of the premises.”
By November of 2010, plaintiffs were $25,600 in arrears on their rent under the 2009 lease. The parties reached another agreement, the First Amendment of the lease, pursuant to which defendant agreed to waive the rent arrears and defer monthly payments on the promissory notes in exchange for an increase in rent and additional guarantees of the lease.
Nonetheless, plaintiffs commenced this action in an effort to, inter alia, set aside the promissory notes and Boter’s personal guarantees of the notes (collectively, the notes) and to compel defendant to perform the Landlord’s Work delineated in the 2003 lease. In the first cause of action, plaintiffs seek a declaration that the notes are unconscionable and void as against pub- *519 lie policy. In support of that claim, plaintiffs allege that, at the meeting at which Boter executed the 2009 lease and the notes, the attorney who attended on defendant’s behalf had represented Productions in connection with the assignment to Mossberg. Plaintiffs further assert that Boter was undergoing chemotherapy treatment for cancer at the time of the meeting. In addition, plaintiffs allege that during the meeting, defendant represented to Boter that it would perform all of the Landlord’s Work outlined in the 2003 lease, that the rent could be renegotiated if it became too onerous, that the ancillary documents “were only letters executed to ensure that [djefendant would avoid the litigation it encountered with Mossberg,” and that defendant would offer Boter’s son a job.
The second cause of action seeks a declaration that the notes are void because the aforementioned representations amounted to fraud in the inducement. The third cause of action, for fraud in the execution, alleges that the notes were not supported by consideration, did not indicate why they were being given, and differed from the draft notes that were “intended for execution.” The fourth cause of action seeks reformation of the 2009 lease to include the representations allegedly made by defendant at the September 2009 meeting regarding the Landlord’s Work.
In the fifth cause of action, plaintiffs seek damages in connection with defendant’s breach of its promise to perform the Landlord’s Work. In the sixth cause of action, seeMng damages for tortious interference with prospective business relations, plaintiffs allege that defendant demanded access to the premises for purposes of showing the space to a party interested in using the theater, notwithstanding that plaintiff was negotiating with the same prospective client. Finally, plaintiffs claim in the seventh cause of action that defendant surreptitiously connected plaintiffs’ Con Edison meter to the adjacent property, also owned by defendant, causing plaintiffs to be billed $86,000 for electricity they did not use.
Defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). It argued that plaintiffs waived any unconscionability claim by failing to disaffirm the notes in a timely fashion. It further argued that plaintiffs’ claim that they were fraudulently induced to enter into the notes by defendant’s alleged promise to perform the Landlord’s Work is barred by the general releases executed at the end of the Mossberg litigation. Defendant similarly relied on those releases in arguing that plaintiffs could not insist that the 2009 lease should be reformed to include a requirement that defendant completed *520 the Landlord’s Work. Defendant also argued that the fraud in the execution claim fails because the leasehold interest was sufficient consideration, and the complaint fails to allege how the executed documents varied from the drafts which plaintiffs maintain were “intended for execution.” As for the cause of action for tortious interference, defendant asserted that it had a contractual right to request entry to the premises, and that, in any event, the claim was not supported by the requisite allegation that plaintiffs’ failure to consummate a transaction with the unspecified client was a direct result of defendant’s behavior. Finally, defendant construed plaintiffs’ seventh cause of action as one for tortious interference, and again contended that the allegations were too vague to state such a claim. In opposition to the motion, Boter submitted an affidavit which essentially reiterated the allegations in the complaint.
The IAS court denied the motion in its entirety. It found that “plaintiffs complaint and evidence are sufficient to overcome a CPLR § 3211 (a) (7) challenge.” It further held that “the documents do not bar plaintiffs claim of misrepresentation as they do not establish a defense as a matter of law at this stage of the action.”
“A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made — i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party” (Gillman v Chase Manhattan Bank, 73 NY2d 1, 10 [1988] [internal quotation marks and citations omitted]). Here, even if we accept the allegations in the complaint as true, and afford plaintiffs every reasonable inference available from the pleadings, as required (see Leon v Martinez, 84 NY2d 83 [1994]), plaintiffs cannot meet this standard. First, to establish procedural unconscionability, a party needs to establish the presence of certain elements during the transaction such as deceptive or high-pressured tactics, the use of fine print in the contract, a lack of experience and education and a disparity in bargaining power (Gillman, 73 NY2d at 11). Plaintiffs point to the fact that Boter was undergoing chemotherapy, but fail to allege that this impeded his ability to act rationally in conducting business, or that defendant took advantage of his physical condition.
Further, there is no basis to conclude that Boter was not sophisticated enough to enter into the agreements, especially since he executed the 2003 lease and acted as the principal of the entity that ran a significant theater operation. That the at *521 torney who previously represented Boter attended the meeting at which the notes were executed on defendant’s behalf does not establish that the playing field was tilted too heavily in defendant’s favor. All told, “plaintiffs failed to plead anything regarding an alleged lack of meaningful choice . . . and it is noteworthy that plaintiffs were free to walk away from the lease negotiations at any time and rent space elsewhere” (Accurate Copy Serv. of Am., Inc. v Fisk Bldg. Assoc. L.L.C., 72 AD3d 456, 457 [1st Dept 2010], lv denied 15 NY3d 711 [2010]). In any event, the agreements are not substantively unconscionable. There is nothing inherent in the notes and the lease guaranty which suggests that the terms were “unreasonably favorable” to defendant (Gillman, 73 NY2d at 12).
Plaintiffs’ second cause of action, for a declaration that the notes are void for having been induced through fraud, is only viable if there is an allegation that they reasonably relied on defendant’s representations (see Comtomark, Inc. v Satellite Communications Network, 116 AD2d 499, 501 [1st Dept 1986]). Plaintiffs claim that they executed the notes because defendant promised that it would complete the Landlord’s Work, ultimately tear up the notes, offer Boter’s son a job, and consider renegotiating the lease terms if the rent turned out to be onerous. Initially, we disagree with defendant that the releases exchanged at the conclusion of the Mossberg litigation bar this claim. The parties were free to disregard the releases and once again negotiate the Landlord’s Work. Nevertheless, the clause in the 2009 lease whereby plaintiffs explicitly acknowledged that defendant made no representations concerning the premises, outside of the lease itself, bars plaintiffs from relying on parol evidence of alleged oral representations (see Mahn Real Estate Corp. v Shapolsky, 178 AD2d 383, 385 [1st Dept 1991]). In any event, in light of plaintiffs’ assertion that defendant failed to perform the Landlord’s Work even when it was expressly required by the 2003 lease, it was not reasonable for plaintiffs to rely on subsequent oral representations from defendant regarding performance of the work. For these reasons, plaintiffs’ fourth and fifth causes of action, for, respectively, reformation of the 2009 lease and damages in connection with defendant’s failure to perform the Landlord’s Work, should have been dismissed as well.
It was similarly unreasonable for plaintiffs to rely on defendant’s alleged representation that the notes and guarantees were only “letters” designed to avoid the litigation which Mossberg had commenced. The notes, on their face, are not “letters,” but rather legitimate instruments indebting Dabriel (see Dunkin’ *522 Donuts of Am. v Liberatore, 138 AD2d 559, 560 [2d Dept 1988] [holding that, even if guarantee was deceptively described as a “routine document,” it was enforceable because it clearly indicated that the defendant was guaranteeing a debt, and the document was unambiguously identified as a personal guarantee]). The alleged promise that the rent “would be renegotiated in the event the business could not handle the rental amount” is too vague to have been justifiably relied on by plaintiffs. As for the promise to employ Boter’s son, plaintiffs do not allege that this representation directly induced them to enter the 2009 lease.
For these reasons, we also find that there was no fraud in the execution of the ancillary documents. Further, the 2009 lease clearly provides that the notes were given as an inducement for entering into the lease, and thus, contrary to plaintiffs’ contention, they were supported by consideration (Dunkin’ Donuts, 138 AD2d at 560-561). Plaintiffs’ argument that the documents differed from the ones “intended for execution” must fail because they make no allegations as to how any drafts may have differed from the final versions. In any event, plaintiffs have offered insufficient evidence as to why their voluntary execution of the “wrong” documents was excusable.
As to plaintiffs’ sixth cause of action, for tortious interference with a prospective business relationship, they have not identified who defendant brought to the premises, how defendant’s showing of the space was a substantial interference with plaintiffs’ business opportunity, or that but for defendants’ conduct, plaintiffs would have entered into the prospective contract. Accordingly, the allegations fail to make out the necessary elements of such a claim (see e.g. Vigoda v DCA Prods. Plus, 293 AD2d 265, 266-267 [1st Dept 2002]).
Finally, defendant characterizes plaintiffs’ seventh cause of action as one for tortious interference with contractual relations or economic advantage, and argue that plaintiffs have not alleged the necessary elements of either of those claims. While plaintiffs have perhaps pleaded this claim inartfully, they have undoubtedly set forth a cause of action based on conversion of electricity (see Good Sports of N.Y. v Llorente, 280 AD2d 261, 262 [1st Dept 2001], lv denied 96 NY2d 714 [2001]). Concur— Mazzarelli, J.P, Andrias, Moskowitz, Acosta and Abdus-Salaam, JJ.