Egan Jr., J.
Appeal from an order of the Supreme Court (Reynolds Fitzgerald, J.), entered May 30, 2012 in Broome County, which denied petitioner’s application pursuant to CPLR 7503 to stay arbitration between the parties.
Petitioner is the owner and/or manager of several real estate properties including, insofar as is relevant here, a multi-unit apartment complex located in Broome County. On September 8, 2011, the complex sustained extensive flood damage when the nearby Susquehanna River spilled over its banks, prompting petitioner to seek out available remediation contractors. Two days later, petitioner entered into a contract with respondent EnviroTech Services, Inc. for restoration and remediation of the damaged premises. Two days after that, and in conjunction therewith, petitioner also executed an equipment rental agreement covering the cost of the various water removal and drying equipment required for the project. Both of these one-page agreements primarily were printed in green ink. Although a budget estimate prepared on September 28, 2011 projected the total cost of the work to be approximately $600,000, the final invoice tendered in November 2011 was in excess of $1.1 million.
Petitioner, believing that it had been overcharged, paid only $500,000 of the total amount billed and respondents, relying upon the dispute resolution clauses contained in the respective contracts, filed a demand for arbitration.[1] In response, petitioner commenced this proceeding pursuant to CPLR 7503 to stay arbitration contending, among other things, that there was no valid agreement to arbitrate. Supreme Court denied the petition, and this appeal by petitioner ensued.
On a motion to stay or compel arbitration, our inquiry is limited to ascertaining (1) whether there was a valid agreement to arbitrate, (2) if so, whether the parties complied with the agreement, and (3) whether the underlying claim is timely (see Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1, 6-7 [1980]; JetBlue Airways Corp. v Stephenson, 88 AD3d 567, 571 [2011]). Here, petitioner argues only that there was no valid agreement to arbitrate—a contention premised in large measure upon what it characterizes as the hidden, inconsistent and/or unconscionable nature of the dispute resolution clauses contained in the underlying contracts.
*1253 In this regard, the remediation/restoration agreement provides, in relevant part, that petitioner and EnviroTech “agree that all matters in dispute between them, included but not limited to any controversy or claim between them arising out of or relating to this agreement or to the identified property in any way, whether by virtue of contract, tort or otherwise, shall be settled exclusively by arbitration.” Contrary to petitioner’s assertion, this is a broadly worded arbitration clause that, in turn, is sufficient to demonstrate the parties’ intent to submit their dispute to arbitration (see Bujanow v V.P. Bldg. Corp., 295 AD2d 780, 780 [2002], lv denied 99 NY2d 503 [2002]; cf. Brandle Meadows, LLC v Bette, 84 AD3d 1579, 1580-1581 [2011])—notwithstanding other language that purports to limit the arbitrator’s powers.[2] Nor are we persuaded that this arbitration clause was “hidden” in the remediation contract. Although the clause was printed on the reverse side of a one-page document, it appeared under a heading labeled “ARBITRATION,” and the front side of that document called the reader’s attention to the terms and conditions printed on the reverse thereof (cf. Blair v County of Albany, 127 AD2d 950, 951 [1987]). To the extent that petitioner attaches significance to the fact that such clause appeared in fine print (and in green ink) on the reverse side of the agreement, we note that virtually the entire agreement was printed in the same size type and the same color ink. As such, this simply is not a case where the relevant arbitration provision was buried in the midst of a multi-page contract or otherwise obscured (see Brower v Gateway 2000, 246 AD2d 246, 253 [1998]; Edwards v North Am. Van Lines, 129 AD2d 869, 871 [1987]).[3]
As to the crux of petitioner’s appeal—that the contracts at issue are unconscionable and/or constitute contracts of adhesion—“an unconscionable contract [is] defined as one which is *1254 so grossly unreasonable as to be unenforcible because of an absence of meaningful choice on the part of one . . . partly] together with contract terms which are unreasonably favorable to the other” (Emigrant Mtge. Co., Inc. v Fitzpatrick, 95 AD3d 1169, 1169-1170 [2012] [internal quotation marks and citations omitted]; see Gillman v Chase Manhattan Bank, 73 NY2d 1, 10 [1988]; Warren Elec. Supply v Davidson, 284 AD2d 869, 870 [2001]). Unconscionability, in turn, has two elements. Substantive unconscionability ‘ ‘appear[s] in the content of the contract per se” and may include, by way of example, “inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty” (Emigrant Mtge. Co., Inc. v Fitzpatrick, 95 AD3d at 1170 [internal quotation marks and citations omitted]). Procedural unconscionability, on the other hand, entails “an examination of the contract formation process and the alleged lack of meaningful choice” (Gillman v Chase Manhattan Bank, 73 NY2d at 10-11). In this regard, “[t]he focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power” (id. at 11 [citation omitted]; see Dabriel, Inc. v First Paradise Theaters Corp., 99 AD3d 517, 520 [2012]); Brower v Gateway 2000, 246 AD2d at 253; see also Berger-Vespa v Rondack Bldg. Inspectors, 293 AD2d 838, 841 [2002] [similarly defining a contract of adhesion]; Matter of Ball [SFX Broadcasting], 236 AD2d 158, 161 [1997], appeal dismissed 91 NY2d 921 [1998], lv denied 92 NY2d 803 [1998]; Precision Mech. v Dormitory Auth. of State of N.Y., 5 AD3d 653, 654 [2004]). Based upon our review of the subject agreements, and upon due consideration of the circumstances surrounding their execution, we find that neither element has been satisfied here.
Although the equipment rental agreement does not contain a reciprocal arbitration provision and indeed limits petitioner’s remedies in the event of a default by EnviroTech, “mutuality of remedy is not required in an arbitration contract” (Matter of Ball [SFX Broadcasting], 236 AD2d at 161) and, to our analysis, “[tjhere is nothing inherent in the [agreements] . . . which suggests that the terms [are] unreasonably favorable to [EnviroTech]” (Dabriel, Inc. v First Paradise Theaters Corp., 99 AD3d at 521 [emphasis added; internal quotation marks and citation omitted]). More to the point, the record simply does not support petitioner’s assertion that it lacked a meaningful choice in retaining EnviroTech’s services. While the dispute resolution clauses appear on the reverse side of the respective agreements, *1255 both documents—as noted previously—specifically call the reader’s attention to those additional terms and conditions and advise that such provisions are part and parcel thereof. Additionally, although the damage to petitioner’s property no doubt was extensive and required prompt attention, petitioner had commercial property holdings in a number of states and, as such, cannot be said to be an inexperienced or unsophisticated business entity. Further, the respective agreements were signed between two and four days after the flood occurred, thereby affording petitioner sufficient time to review the terms thereof and seek clarification or legal advice if desired (see Matter of Ball [SFX Broadcasting], 236 AD2d at 161). Moreover, even assuming—as petitioner insists—that the “catastrophic flooding event” resulted in “an emergent need to retain a contractor,” thereby placing it on unequal footing vis-a-vis EnviroTech, the unconscionability doctrine is not designed “to redress . . . inequality between the parties but simply to ensure that the more powerful party cannot surprise the other party with some overly oppressive term” (Brower v Gateway 2000, 246 AD2d at 253 [internal quotation marks and citation omitted]; see RE Corp. v New York Energy Sav. Corp., 78 AD3d 546, 547 [2010]). Finally, the record is devoid of any indication that EnviroTech engaged in high-pressure sales tactics or that petitioner otherwise was deprived of a meaningful choice with respect to the retention of EnviroTech’s services (see Arrowhead Golf Club, LLC v Bryan Cave, LLP, 59 AD3d 347, 348 [2009]; Berger-Vespa v Rondack Bldg. Inspectors, 293 AD2d at 841; Warren Elec. Supply v Davidson, 284 AD2d at 870).[4] Simply put, the record does not support a finding that EnviroTech had petitioner over a barrel with respect to the execution of the contracts at issue. Petitioner’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Rose, J.E, Lahtinen and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.

. The arbitration demand identifies the claimant as EnviroTech Enterprises, LLC—presumably an entity that bears some business relationship to the named respondents in this proceeding.

. To the extent that petitioner challenges the validity of the underlying contracts, we find these agreements to be supported by adequate consideration (see generally Hollander v Lipman, 65 AD3d 1086, 1087 [2009]; Matter of Ball [SFX Broadcasting], 236 AD2d 158, 161 [1997], appeal dismissed 91 NY2d 921 [1998], lv denied 92 NY2d 803 [1998]), and any issue regarding the substantive provisions thereof is a matter for the arbitrator to resolve (see generally Matter of CPS 1 Realty LP v R.P. Brennan Gen. Contrs. & Bldrs., Inc., 66 AD3d 418, 418 [2009], lv denied 13 NY3d 713 [2009]; Matter of Montgomery-Otsego-Schoharie Solid Waste Mgt. Auth. [Bonded Insulation Co.], 215 AD2d 995, 996 [1995]).

. The equipment rental agreement does not mandate arbitration but, rather, provides that arbitration is one of the remedies available to EnviroTech upon a default by petitioner. Petitioner’s primary objection to this provision is that the terms thereof are one-sided and, hence, the agreement itself is unconscionable—an argument to which we now turn.

. In this regard, petitioner submitted an affidavit from the district manager who signed the agreements on behalf of petitioner, wherein the manager attested to her inexperience in such matters and the urgent need to promptly retain a remediation contractor. It is unclear whether this affidavit, which apparently was submitted as an exhibit to petitioner’s reply papers, was considered by Supreme Court. Although we have considered the affidavit on this appeal, we find that it falls short of establishing that the subject agreements were unconscionable.