Matter of People v Northern Leasing Sys., Inc. (2019 NY Slip Op 01179)





Matter of People v Northern Leasing Sys., Inc.


2019 NY Slip Op 01179


Decided on February 19, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 19, 2019

Manzanet-Daniels, J.P., Kapnick, Gesmer, Oing, JJ.


450460/16 8433 8432

[*1]In re People of the State of New York, etc., et al., Petitioners-Respondents-Appellants,
v
Northern Leasing Systems, Inc., et al., Respondents-Appellants-Respondents, Joseph I. Sussman, P.C., et al, Respondents-Respondents.


Cahill Gordon & Reindell LLP, New York (Thomas J. Kavaler of counsel), for appellants-respondents.
Barbara D. Underwood, Attorney General, New York (Ester Murdukhayeva of counsel), for respondents-appellants.
Rottenberg Lipman Rich, P.C., New York (Mark M. Rottenberg of counsel), for respondents.



Orders, Supreme Court, New York County (Lucy Billings, J.), entered November 29, 2017, which granted respondents Northern Leasing Systems, Inc., Lease Finance Group LLC, MBF Leasing LLC, Lease Source-LSI, LLC, Golden Eagle Leasing LLC, Pushpin Holdings LLC, Jay Cohen, and Neil Hertzman's (collectively, Northern Respondents) motion to dismiss the Executive Law § 63(12) and CPLR 5015(c) claims as against them to the extent the claims are based on illegal conduct in violation of General Business Law § 349, and denied the motion as to the remainder of the Executive Law § 63(12) and CPLR 5015(c) claims and the Business Corporation Law § 1101 claim, and granted respondents Joseph I. Sussman, P.C., Joseph I. Sussman, and Eliyahu R. Babad's (together, Attorney Respondents) motion to dismiss the petition as against them, unanimously modified, on the law, to deny the Attorney Respondents' motion except as to the General Business Law 349 claim, and otherwise affirmed, without costs.
The petition fails to state a cause of action based on violations of General Business Law 349, because the lessees and guarantors who were affected by the deceptive conduct are not alleged to be "consumers" within the meaning of the statute. There are no factual allegations that would show that the underlying transactions involve goods or services for "personal, family or household purposes" (Cruz v NYNEX Info. Resources, 263 AD2d 285, 289 [1st Dept 2000] [internal quotation marks omitted], citing, inter alia, General Business Law § 399-c).
The Executive Law § 63(12) claim is based on a type of fraud recognized in the common law, and therefore is governed by the six-year statute of limitations (CPLR 213[1]; People v Credit Suisse Sec. [USA] LLC, 31 NY3d 622, 634 [2018]).
The petition alleges that the Northern Respondents, via "Independent Sales Organizations" (ISO) sales representatives, knowingly made misrepresentations and omissions of fact to merchants for the purpose of inducing them to enter into the predatory leasing agreements and that the merchants justifiably relied on those misrepresentations or omissions in entering into the agreements to their detriment (see Ambac Assur. Corp. v Countrywide Home Loans, Inc., 31 NY3d 569, 578-579 [2018]; see also Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486 [2008]). The Northern Respondents argue that they cannot be found liable for conduct attributable to the ISOs because the agreements between them and the ISOs, and the leases [*2]presented to the merchants, contain a disclaimer of agency which provides that the ISOs were acting as independent contractors, did not have the authority to bind the Northern Respondents, and were not authorized to act as the Northern Respondents' agents.
The Northern Respondents' reliance on Shawmut Woodworking & Supply, Inc. v ASICS Am. Corp. (162 AD3d 486, 487 [1st Dept 2018]) in support of this argument is, however, misplaced, because in that case, this Court specifically noted that the complaint failed to allege actual or apparent authority, or that the franchisor actually authorized its franchisee to enter into the subject contract on behalf of the franchisor. The Shawmut Court further pointed out that the complaint there failed to allege that the plaintiff relied on any representations or conduct by the franchisor that would give rise to the appearance and belief that the franchisee possessed authority to enter into the contract in issue.
Here, contrary to the facts in Shawmut, the petition alleges that the ISO sales representatives acted as Northern Respondents' agents under a theory of actual authority (see Greene v Hellman, 51 NY2d 197, 204 [1980]). The allegations sufficiently demonstrate that the Northern Respondents trained the ISO representatives, provided them with the specific lease forms, offering detailed instructions and materials about how to complete the forms, and then ratified the representatives' deceptive acts by retaining the benefits of the acts with knowledge of the material facts (see Northern Leasing Sys., Inc. v Kollars, 56 Misc 3d 131[A], 2017 NY Slip Op 50878[U] [App Term, 1st Dept 2017]; cf. Standard Funding Corp. v Lewitt, 89 NY2d 546, 552 [1997]; Matter of New York State Med. Transporters Assn. v Perales, 77 NY2d 126, 131 [1990]). In view of the foregoing, we need not reach the issue of apparent authority.
The Northern Respondents' argument that, while there is no statute of limitations on CPLR 5015(c) claims, the Attorney General (on behalf of the administrative judge) is required to bring those claims within a reasonable period of time from the discovery of the deceptive acts is unpreserved. In any event, we disagree. The statute codifies the inherent power of the courts to supervise its own processes, and that power is not subject to time limitations (see Matter of Thompson v Lincoln Budget Corp., 88 Misc 2d 894, 896 [Civ Ct, NY County 1975], affd 89 Misc 2d 252 [App Term, 1st Dept 1976], mod 59 AD2d 683 [1st Dept 1977] [setting time limitation based on facts peculiar to case], appeal dismissed 44 NY2d 697 [1978]).
The petition adequately alleges that the Northern Respondents' conduct falls within the "sham exception" to the Noerr-Pennington doctrine (see Professional Real Estate Invs., Inc. v Columbia Pictures Indus., Inc., 508 US 49, 60 [1993]; Singh v Sukhram, 56 AD3d 187, 192 [2d Dept 2008]; see also Eastern R.R. Presidents Conference v Noerr Motor Freight, Inc., 365 US 127 [1961]; United Mine Workers of Am. v Pennington, 381 US 657 [1965]). The allegations that the Northern Respondents created legal obligations through misrepresentations and fraud, and then attempted to enforce those obligations through abusive pre-litigation and litigation practices sufficiently demonstrate that the Northern Respondents' debt-collection activities and procuring of default judgments were "objectively baseless" (Professional Real Estate Invs., 508 US at 52; see e.g. Sykes v Mel Harris & Assoc., LLC, 757 F Supp 2d 413, 419-420, 429 [SD NY 2010]; Shetiwy v Midland Credit Mgt., 980 F Supp 2d 461, 475-476 [SD NY 2013]).
Insofar as it is based on unconscionable contract terms, the Executive Law § 63(12) claim states a cause of action (see Gillman v Chase Manhattan Bank, 73 NY2d 1, 10 [1988]). The element of procedural unconscionability is sufficiently alleged given the assertions that the ISO sales representatives targeted vulnerable individuals — the elderly, disabled, and immigrants with limited fluency in English — and employed deceptive tactics to induce them to execute the leases (see Dabriel, Inc. v First Paradise Theaters Corp., 99 AD3d 517, 520 [1st Dept 2012]). Although the challenged contract provisions are ordinarily enforceable, the element of substantive unconscionability is sufficiently stated by the allegations that the contract provisions are "unreasonably favorable" to the Northern Respondents as enforced by the Northern Respondents (see Gillman, 73 NY2d at 10).
The petition states a cause of action as against individual respondent Neil Hertzman, Northern Leasing's Vice President of Customer Service and Collections, who was responsible for addressing customer complaints. The allegations that in response to customer complaints Hertzman relied on the unconscionable contract terms and disclaimed responsibility for the ISO [*3]sales representatives' misrepresentations sufficiently demonstrate that he was aware of the fraud scheme and participated in it (see People v Apple Health & Sports Clubs, 206 AD2d 266, 267 [1st Dept 1994], lv dismissed in part, denied in part 84 NY2d 1004 [1994]; see also Polonetsky v Better Homes Depot, 97 NY2d 46, 55 [2001]).
The petition adequately alleges that the Attorney Respondents' conduct falls within the sham exception to the Noerr-Pennington doctrine (see Professional Real Estate Invs., 508 US at 60). The allegations that the Attorney Respondents continually engaged in a large-scale practice of bringing debt actions against numerous lessees and guarantors across a span of years, despite being aware of the same defenses raised by the lessees against the Northern Respondents, including fraud and misrepresentations, sufficiently allege that the Attorney Respondents knew that their litigation-related conduct was objectively baseless (see id.). The allegations sufficiently show a knowing participation in the scheme that justifies holding the Attorney Respondents liable under Executive Law § 63(12) (see People v Law Offs. of Andrew F. Capoccia, 289 AD2d 650 [3d Dept 2001]; People v Boyajian Law Offs., P.C., 17 Misc 3d 1119[A], 2007 NY Slip Op 52077[U] [Sup Ct, NY County 2007]). The
allegations also support a finding of frivolous conduct (see 22 NYCRR 130-1.1).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 19, 2019
CLERK