[834 NYS2d 422]

Donna Fordham-Coleman, as Administratrix of the Estate of Velma Arlene Fordham, Deceased, Appellant-Respondent, v National Fuel Gas Distribution Corporation, Respondent-Appellant, et al., Defendant.

Fourth Department, April 20, 2007

## APPEARANCES OF COUNSEL

*John Feroleto, Attorneys at Law*, Buffalo (*John P. Feroleto* of counsel), for appellant-respondent.

*Phillips Lytle LLP*, Buffalo (*Kevin J. English* of counsel), for respondent-appellant.

### OPINION OF THE COURT

GREEN, J.

On February 19, 2001, the body of 58-year-old Velma Arlene Fordham (decedent) was discovered in her unheated residence at 227 Burgard Place in the City of Buffalo. The Chief Medical Examiner for Erie County subsequently determined that the cause of death was hypothermia. Plaintiff, decedent's daughter, commenced this action as administratrix of decedent's estate, seeking, inter alia, damages for decedent's wrongful death and conscious pain and suffering. Plaintiff alleges that decedent's death was caused by the failure of defendant National Fuel Gas Distribution Corporation (National Fuel) to provide gas service to decedent, leaving her without a source of heat for her residence.

In November 2000 decedent made arrangements to move to 227 Burgard Place. On November 16th she telephoned National Fuel to transfer service from her former residence to her new residence. She requested that service at her former residence be turned off on November 20th and that service be transferred to her new residence the following day. As a result of decedent's telephone call, National Fuel generated a work order. On November 21st, the day on which decedent's gas service was scheduled to be transferred to 227 Burgard Place, a major lake effect snowstorm struck Buffalo, and National Fuel was unable to complete the transfer. On November 22nd decedent notified National Fuel by telephone that she did not have transportation to 227 Burgard Place but that her landlord would be available

to provide access to her new residence. The landlord also telephoned National Fuel that day and provided the same information, along with his telephone number. National Fuel neither appeared at 227 Burgard Place nor telephoned the landlord that day.

A week later, on November 29th, decedent remained without gas service at her new residence. She went to National Fuel's consumer assistance center that day and spoke to a consumer business representative (CBR). The CBR mistakenly treated decedent as a new customer, and a new work order was generated by National Fuel. The CBR advised decedent that her application for service would be denied based upon an unsatisfied judgment from 1997. The CBR also provided decedent with a written "Notice of Residential Service Denial" (Notice of Denial), which he signed using a "pen name." Although the Notice of Denial contains the initials of the CBR's supervisor on a line provided for the supervisor's signature, the supervisor never saw the document, and his initials were placed there by the CBR. According to both the CBR and a senior manager of the consumer business division, it was standard practice at National Fuel for a CBR to sign the supervisor's initials on a Notice of Denial.

After decedent spoke to the CBR on November 29th, she went from National Fuel's consumer assistance center to the Home Energy Assistance Program (HEAP) office at the Erie County Department of Social Services (DSS). At that time, decedent had no source of income. Decedent received a combined basic and emergency HEAP payment and returned to National Fuel's consumer assistance center, again seeking service for 227 Burgard Place. The same CBR advised decedent that National Fuel would not provide her with service because the amount of the unsatisfied 1997 judgment exceeded the HEAP payment.

No further action was taken by National Fuel with respect to decedent's repeated requests for service until December 13th, when a third work order was generated to ascertain the status of the original work order. On that date the second work order, which had been generated as the result of decedent's application at the consumer assistance center, was cancelled. In response to the third work order, a National Fuel serviceperson went to 227 Burgard Place on December 14th. When he arrived there, however, he discovered that there was no gas meter for decedent's residence, and he therefore was unable to activate service. On December 20th, National Fuel sent a letter to

decedent at 227 Burgard Place, directing her to schedule an appointment to activate her gas service.

It is not clear on the record before us where decedent was residing following her first request for gas service at her new residence in mid-November 2000, although it appears that she stayed with friends during portions of the three ensuing months. The landlord at 227 Burgard Place did not see decedent during that three-month period. He knocked on decedent's door at least once and up to three times a week, but there was never an answer. Although decedent had moved boxes containing her belongings to 227 Burgard Place, the landlord noticed that she had not unpacked the boxes as of the first week of February 2001. The landlord did not enter the residence again until February 19, 2001, at which time he discovered decedent's body on the floor. Gas service had never been activated at 227 Burgard Place, and the residence was unheated. The Chief Medical Examiner examined the body at the scene and subsequently performed an autopsy and completed the death certificate. The death certificate indicates that the date of death is "02/19/2001" and that the cause of death is hypothermia.

Plaintiff commenced this action on February 18, 2003. In the first two causes of action, plaintiff alleges that National Fuel was negligent and she seeks compensatory damages for decedent's wrongful death and conscious pain and suffering. In the third cause of action, plaintiff seeks an award of punitive damages based, inter alia, upon National Fuel's reckless disregard of decedent's health and safety. Inasmuch as a separate cause of action for punitive damages does not lie (*see Smith v County of Erie*, 295 AD2d 1010, 1011 [2002]; *Staudacher v City of Buffalo*, 155 AD2d 956 [1989]), we shall hereafter refer to the third cause of action as a claim for punitive damages.

National Fuel moved for summary judgment dismissing the complaint against it, and Supreme Court granted those parts of the motion with respect to the first cause of action, for wrongful death, and the claim for punitive damages. In addition, the court sua sponte directed that its "decision and the moving papers upon which it is based are filed under seal until a determination can be made as to which of them are under an earlier continuing seal and/or protective order of the [c]ourt." For the reasons that follow, we conclude that the order should be modified by denying the motion in its entirety and reinstating the first cause of action and the claim for punitive damages against National Fuel, and by vacating the sealing directive.

## Wrongful Death

█ National Fuel sought summary judgment dismissing the wrongful death cause of action as time-barred. A wrongful death cause of "action must be commenced within two years after the decedent's death" (EPTL 5-4.1 [1]; *see Burwell v Yonkers Gen. Hosp.*, 6 AD3d 478, 480 [2004]; *Cole v Tat-Sum Lee*, 309 AD2d 1165, 1167 [2003]), and National Fuel failed to meet its burden of establishing as a matter of law that the limitations period had run (*see Brush v Olivo*, 81 AD2d 852, 853 [1981]). Plaintiff commenced this action on February 18, 2003, less than two years after the date of death set forth in the death certificate. "A certified copy of the record of a . . . death . . . shall be prima facie evidence in all courts and places of the facts therein stated" (Public Health Law § 4103 [3]). Here, the death certificate unequivocally and unqualifiedly lists the date of death as "02/19/2001." There is no indication that the notation "Found" above the time listed as the time of death refers to the date of death.

We agree with National Fuel that the prima facie evidence of the date of death supplied by the death certificate may be overcome with evidence demonstrating that the death occurred on a different date (*see generally Matter of Whitaker*, 120 Misc 2d 1021, 1022-1023 [1983]). In this case, however, the evidence apart from the death certificate merely raises a triable issue of fact with respect to the date of death. National Fuel's expert concluded, based upon his review of the Medical Examiner's records, data concerning the temperatures in February 2001 and evidence that decedent was last seen alive in January 2001, that the death of decedent occurred two to three weeks prior to the discovery of her body on February 19, 2001. The Chief Medical Examiner, however, repeatedly testified during his deposition that he could not determine an approximate date of death. He further testified that decedent was dead "[l]ong enough for her to start to undergo decompositional changes," but "[i]t's extremely, extremely, extremely varied and no one can say; absolutely no one can say" how long it would take for the decompositional changes he observed in decedent to occur. Thus, the testimony of the Chief Medical Examiner undercuts both the credibility of National Fuel's expert and the substance of his opinion with respect to the date of death. In light of the conflicting evidence, the issue of the date of decedent's death is properly resolved by the trier of fact. We therefore conclude that the wrongful death cause of action should be reinstated.

## Conscious Pain and Suffering

 National Fuel sought summary judgment dismissing the conscious pain and suffering cause of action on the ground that its actions were not a proximate cause of decedent's alleged injuries and death but, rather, merely furnished "the condition or occasion" for the injuries and death (*Baptiste v New York City Tr. Auth.*, 28 AD3d 385, 387 [2006]). The evidence, however, is sufficient to establish prima facie that National Fuel was negligent and that its negligence was a substantial cause of decedent's alleged injuries and death (*see generally Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980], *rearg denied* 52 NY2d 784 [1980]). The evidence supports plaintiff's allegations that National Fuel was negligent based on the violation of its obligations under the Public Service Law, the corresponding regulations, and its own procedures by denying the application of decedent for continuing service at her new residence (*see* Public Service Law § 31 [3]; 16 NYCRR 11.3 [a] [5]), and based on its failure to initiate service within five business days of decedent's original request for gas service or within a reasonable period thereafter, allowing for delays occasioned by the snowstorm (*see* Public Service Law § 31 [5]; 16 NYCRR 11.3 [a] [4]). The Legislature has recognized that discharging those obligations in the provision of residential gas service "is necessary for the preservation of the health and general welfare and is in the public interest" (Public Service Law § 30; *see* 16 NYCRR 11.1).

Further, it is of course well established that the plaintiff in a wrongful death action is not held to as high a degree of proof "and is entitled to the benefit of every favorable inference which can be reasonably drawn from the evidence" (*Juiditta v Bethlehem Steel Corp.*, 75 AD2d 126, 136 [1980]; *see Noseworthy v City of New York*, 298 NY 76, 80 [1948]; *Rodak v Fury*, 31 AD2d 816 [1969]; *see also Pierson v Dayton*, 168 AD2d 173, 175 [1991]). It is undisputed that decedent froze to death in her unheated residence and that her residence was unheated because National Fuel failed to provide her with gas service. Thus, the record supports the inference that decedent's "injuries were sustained, in whole or in part, by a cause for which [National Fuel was] responsible" (*Pierson*, 168 AD2d at 176). National Fuel contends that decedent's death was avoidable, because decedent could have chosen to reside elsewhere, she could have pursued her remedies under the Public Service Law, and she could have made greater efforts to obtain public

assistance benefits. Decedent's actions, however, do not as a matter of law break the causal nexus between National Fuel's alleged negligence and decedent's death. In our view, decedent's actions are not "extraordinary under the circumstances, unforeseeable in the normal course of events, different in kind from the foreseeable risks associated with the original negligence, or independent or far removed from [National Fuel's] conduct" (*Rodriguez v Pro Cable Servs. Co. Ltd. Partnership*, 266 AD2d 894, 895 [1999]). Thus, the court properly determined that proximate cause is an issue for the trier of fact (*see Derdiarian*, 51 NY2d at 315).

## Punitive Damages

National Fuel sought summary judgment dismissing the claim for punitive damages on the ground that its conduct does not rise to the level of moral culpability that would justify an award of punitive damages. Summary judgment dismissing the claim for punitive damages is premature, because plaintiff may be entitled to punitive damages based upon the facts alleged here (*see Smith*, 295 AD2d at 1011; *Laks v Springer*, 101 AD2d 1001 [1984]). Although National Fuel is correct that punitive damages generally are not available in cases involving ordinary negligence (*see Munoz v Puretz*, 301 AD2d 382, 384 [2003]; *Kopec v Hempstead Gardens*, 264 AD2d 714, 716 [1999]), such damages may nevertheless be awarded in "actions based on negligence if such negligence amounts to flagrant misconduct" (*Soucy v Greyhound Corp.*, 27 AD2d 112, 113 [1967]; *see Home Ins. Co. v American Home Prods. Corp.*, 75 NY2d 196, 203-204 [1990]). Conduct justifying an award of punitive damages "need not be intentionally harmful but may consist of actions which constitute willful or wanton negligence or recklessness" (*Home Ins. Co.*, 75 NY2d at 204; *see Hartford Acc. & Indem. Co. v Village of Hempstead*, 48 NY2d 218, 227-228 [1979]; *Kopec*, 264 AD2d at 716; *Harrell v Champlain Enters.*, 222 AD2d 876 [1995]).

Here, there is evidence that National Fuel failed to discharge its obligation to decedent under the Public Service Law and its own procedures by failing to respond in a timely manner to her original request for gas service. In addition, National Fuel's CBR erroneously treated decedent as a new customer rather than a continuing customer and led her to believe that the activation of her gas service was contingent upon her satisfaction of a 1997 judgment or qualification for direct payment by

DSS. Those errors were given the apparent endorsement of a supervisor when, consistent with standard practice at the consumer assistance center, the CBR wrote his supervisor's initials on the Notice of Denial.

The alleged conduct of National Fuel implicates public health and safety concerns (*see generally* Public Service Law § 30; *Hall v Consolidated Edison Corp.*, 104 Misc 2d 565, 568 [1980]), as well as the policies permitting awards for punitive damages. Such awards

> "are intended as punishment for gross misbehavior for the good of the public and have been referred to as a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine. . . . Punitive damages are allowed on the ground of public policy and not because the plaintiff has suffered any monetary damages for which [s]he is entitled to reimbursement . . . . The damages may be considered expressive of the community attitude towards one who wilfully and wantonly causes hurt or injury to another" (*Home Ins. Co.*, 75 NY2d at 203 [internal quotation marks omitted]; *see Loughry v Lincoln First Bank*, 67 NY2d 369, 377 [1986]; *Soucy*, 27 AD2d at 113).

A jury is particularly well suited to the expression of community attitudes, and the decision whether to award punitive damages should "reside in the sound discretion of the original trier of the facts" (*Nardelli v Stamberg*, 44 NY2d 500, 503 [1978]). Here, dismissal of plaintiff's claim for punitive damages is premature, and the issue whether the actions of National Fuel "warrant the imposition of punitive damages should be determined at trial" (*Laks*, 101 AD2d at 1001; *see generally Bikowicz v Nedco Pharmacy*, 100 AD2d 702 [1984]). We therefore conclude that the claim for punitive damages should be reinstated.

## Sealing

■ Plaintiff contends that the court erred in sua sponte directing that its decision and the moving papers upon which it is based be filed under seal "until a determination can be made as to which of them are under an earlier continuing seal and/or protective order of the [c]ourt." National Fuel takes no position on this issue. The regulation governing the sealing of court records in civil cases provides in pertinent part:

"a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties" (22 NYCRR 216.1 [a]).

Here, the court made no finding of good cause, as required by the regulation (*see Matter of Brownstone*, 191 AD2d 167, 168 [1993]). Further, apart from the regulation, "[t]he right of access to . . . court records is also firmly grounded in common-law principles" (*Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 28 AD3d 322, 324 [2006]; *see Danco Labs. v Chemical Works of Gedeon Richter*, 274 AD2d 1, 7 [2000]). Courts should be reluctant to seal court records even when all of the parties to the litigation have requested such sealing (*see Gryphon Dom. VI, LLC*, 28 AD3d at 324), and we perceive no legitimate basis for sealing any part of the record here (*see Brownstone*, 191 AD2d at 168). To the contrary, this action raises serious issues of legitimate public concern, and "[t]he public interest in openness is particularly important on matters of public concern, even if the issues arise in the context of a private dispute" (*Danco Labs.*, 274 AD2d at 7). We therefore conclude that the sealing directive should be vacated.

## Conclusion

Accordingly, we conclude that the order should be modified in accordance with this opinion.

Scudder, P.J., Gorski, Centra and Pine, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified on the law by denying in its entirety the motion of defendant National Fuel Gas Distribution Corporation and reinstating the first cause of action and the claim for punitive damages against it, and by vacating the sealing directive and as modified the order is affirmed with costs to plaintiff.