MANUFACTURERS AND TRADERS TRUST COMPANY, Respondent, v CLIENT SERVER DIRECT, INC., et al., Appellants, et al., Defendants. CLIENT SERVER DIRECT, INC., et al., Third-Party Plaintiffs-Appellants, v M&T BANK CORPORATION et al., Third-Party Defendants-Respondents. (Appeal No. 2.) [68 NYS3d 280]—

Appeal from an order of the Supreme Court, Erie County (Timothy J. Walker, A.J.), entered June 27, 2016. The order, inter alia, granted in part the motion of plaintiff and third-party defendants M&T Bank Corporation, Alfred F. Luhr, III, and Mark Martin for a protective order.

It is hereby ordered that the order so appealed from is unanimously modified on the law by denying that part of the motion for a protective order with respect to demand No. 9, and as modified the order is affirmed without costs, and the matter is remitted to Supreme Court, Erie County, for further proceedings in accordance with the following memorandum: Plaintiff-third-party defendant Manufacturers and Traders Trust Company/M&T Bank Corporation (bank) commenced this action against defendants-third-party plaintiffs Jeffrey T. Drilling and Holly Drilling and their business entities, Client Server Direct, Inc. (CSD) and ACN Properties, LLC (ACN), to collect on two legitimate debt obligations issued by the bank upon which CSD and ACN allegedly defaulted. Defendants-third-party plaintiffs interposed counterclaims against the bank and, together with third-party plaintiff Leap Analytix, LLC (collectively, Drilling Parties), made third-party claims against third-party defendants Alfred F. Luhr, III and Mark Martin, i.e., two bank officers (collectively with the bank, M&T), and third-party defendant Michael (Mick) Whipple, a former loan officer with the bank. The Drilling Parties alleged

that they suffered damages as a result of a fraudulent lending scheme in which Whipple, in the course of his employment with the bank, provided fraudulent loans to unrelated third parties using the credit and identity of the Drilling Parties and other nonparty entities.

Preliminarily, we note that the Drilling Parties filed a notice of appeal in appeal No. 1 from an order denying their motion for partial summary judgment on the issue of liability with respect to their claims against Whipple. The Drilling Parties elected not to perfect that appeal and, therefore, it is deemed abandoned and dismissed for failure to perfect it in a timely fashion (*see* 22 NYCRR 1000.12 [b]; *Wright v Shapiro*, 101 AD3d 1682, 1682 [4th Dept 2012], *lv denied* 21 NY3d 858 [2013]).

The remaining appeals relate to discovery issues. Turning first to the order in appeal No. 3, the Drilling Parties contend that Supreme Court erred in denying their motion to unseal the record. At the outset, we agree with the Drilling Parties that the court improperly denied the motion on the ground that it was an untimely motion for leave to reargue (*see* CPLR 2221 [d] [3]). Contrary to M&T's contention, in issuing that part of its prior order sealing the record in response to a motion to compel and a cross motion for a protective order, the court, without notice to the parties, granted relief that was not requested and, therefore, that part of the prior order was issued sua sponte (*see Northside Studios v Treccagnoli*, 262 AD2d 469, 469 [2d Dept 1999]; *see also USAA Fed. Sav. Bank v Calvin*, 145 AD3d 704, 706 [2d Dept 2016]; *Soggs v Crocco* [appeal No. 1], 184 AD2d 1021, 1021 [4th Dept 1992]). Inasmuch as there was no prior motion to seal the record, the Drilling Parties' subsequent motion seeking to unseal the record cannot be construed as a motion for leave to reargue and, indeed, the Drilling Parties appropriately did not identify it as such (*see* CPLR 2221 [d] [1]). We therefore conclude that the court erred in determining that the Drilling Parties' motion was an untimely motion for leave to reargue (*see Cheri Rest. Inc. v Eoche*, 144 AD3d 578, 579 [1st Dept 2016]).

We nonetheless conclude that the court, in rendering a determination in the alternative, properly denied the Drilling Parties' motion on the merits. It is well established that "[t]here is a presumption that the public has [a] right of access to the courts to ensure the actual and perceived fairness of the judicial system, as . . . 'the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud'" (*Mancheski v*

*Gabelli Group Capital Partners*, 39 AD3d 499, 501 [2d Dept 2007]; *see Maxim Inc. v Feifer*, 145 AD3d 516, 517 [1st Dept 2016]; *Fordham-Coleman v National Fuel Gas Distrib. Corp.*, 42 AD3d 106, 115 [4th Dept 2007]; *Danco Labs. v Chemical Works of Gedeon Richter*, 274 AD2d 1, 7 [1st Dept 2000]). Inasmuch as "confidentiality is the exception and not the rule, 'the party seeking to seal court records has the burden to demonstrate compelling circumstances to justify restricting public access' " (*Maxim Inc.*, 145 AD3d at 517 [citation omitted]). In conformance with those principles, the Uniform Rules for Trial Courts provide, in relevant part, that "a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties" (22 NYCRR 216.1 [a]; *see Fordham-Coleman*, 42 AD3d at 115). Although the term "good cause" is not defined in the rule, courts have held that "a sealing order should clearly be predicated upon a sound basis or legitimate need to take judicial action" (*Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 28 AD3d 322, 325 [1st Dept 2006]; *see Mosallem v Berenson*, 76 AD3d 345, 349 [1st Dept 2010]; *Fordham-Coleman*, 42 AD3d at 115). Inasmuch as "there is no absolute definition, a finding of good cause, in essence, 'boils down to . . . the prudent exercise of the court's discretion' " (*Applehead Pictures LLC v Perelman*, 80 AD3d 181, 192 [1st Dept 2010]; *see Mancheski*, 39 AD3d at 502).

Here, in its written finding of good cause, the court found that the documents produced by M&T during discovery that the Drilling Parties sought to unseal included Whipple's entire email account, which contained thousands of confidential customer documents unrelated to the scheme underlying the claims in this action; bank account statements, financial statements, and loan and credit files of the bank's customers; and confidential credit analyses of such customers. In considering the interests of the bank, the court properly noted that, where, as here, third-party bank customer information is at issue, sealing orders are appropriate inasmuch as "[t]here [is] a compelling interest in sealing . . . third-party financial information since disclosure could impinge on the privacy rights of third parties who clearly are not litigants" (*Mancheski*, 39 AD3d at 502).

With respect to the Drilling Parties' interests, the court properly concluded that the sealing order does not affect their

ability to defend against M&T's claims or pursue their own claims in the action. Instead, the record supports M&T's assertion that the Drilling Parties sought to unseal the record for purposes that included bringing collateral pressure upon the bank with respect to matters unrelated to the merits of their claims by, for example, potentially engaging in online publication of record information. We conclude that the court did not err in determining, under the circumstances of this case, that such purposes were "outweighed by ensuring that the highly confidential . . . [i]nformation remain[ed] confidential" (*cf. Mosallem*, 76 AD3d at 351). Indeed, access to court records has been properly denied where, as here, "court files might . . . become a vehicle for improper purposes" (*Matter of WNYT-TV v Moynihan*, 97 AD2d 555, 556 [3d Dept 1983], citing *Nixon v Warner Communications, Inc.*, 435 US 589, 598 [1978]). In addition, while there is no doubt that a fraudulent lending scheme occurring in a major local bank is of public concern (*see Mosallem*, 76 AD3d at 350), the court properly determined that the contention of the Drilling Parties that there is an overwhelming and urgent need to disclose *nonconfidential* information about the scheme to the public is undermined by the existence of an extensive public record of the scheme and the fact that the Drilling Parties did not challenge the initial sealing order and delayed 10 months before seeking to unseal the record. On the record before us, we cannot conclude that the court abused its discretion in denying the Drilling Parties' motion (*see Mancheski*, 39 AD3d at 502).

With respect to the order in appeal No. 2, the Drilling Parties contend that the court erred in granting that part of M&T's motion for a protective order regarding three supplemental document demands. We agree with the Drilling Parties with respect to demand No. 9. In general, "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action" (CPLR 3101 [a]). Nonetheless, "privileged matter shall not be obtainable" when there is an "objection by a person entitled to assert the privilege" (CPLR 3101 [b]; *see generally Rawlins v St. Joseph's Hosp. Health Ctr.*, 108 AD3d 1191, 1191-1192 [4th Dept 2013]), and a court has the discretion pursuant to CPLR 3103 (a) to "make a protective order denying, limiting, conditioning or regulating the use of any disclosure device."

Here, in demand No. 9 of their supplemental document demands, the Drilling Parties requested "[a]ll documents evidencing or relating to the duties imposed on M&T personnel to ensure compliance with the Bank Secrecy Act." With respect

to the subject demands, including demand No. 9, the Board of Governors of the Federal Reserve System (Board) invoked the bank examination privilege, which "is a qualified rather than [an] absolute privilege [that] accords agency opinions and recommendations and banks' responses thereto protection from disclosure" (*In re Bankers Trust Co.*, 61 F3d 465, 471 [6th Cir 1995], *cert dismissed* 517 US 1205 [1996]; *see Wultz v Bank of China Ltd.*, 61 F Supp 3d 272, 281-283 [SD NY 2013]). As relevant here, the Board asserted that demand No. 9 sought privileged "[c]onfidential supervisory information" (12 CFR 261.2 [c] [1]), and that the Drilling Parties had not exhausted their administrative remedies. The Drilling Parties conceded that they would have to proceed with administrative remedies to the extent that they were pursuing any such documentation arguably within the bank examination privilege, but asserted that their demands were, in fact, limited only to those materials categorically exempt from the definition of "[c]onfidential supervisory information," i.e., "documents prepared by a supervised financial institution for its own business purposes and that are in its possession" (12 CFR 261.2 [c] [2]). Inasmuch as there may be documents responsive to demand No. 9 that were prepared by the bank for its own business purposes and are in its possession (*see id.*), we conclude that the court abused its discretion in granting the protective order without first reviewing documents responsive to that demand. We nonetheless reject the Drilling Parties' contention regarding the other two demands. We therefore modify the order in appeal No. 2 by denying that part of M&T's motion seeking a protective order regarding demand No. 9, and we remit the matter to Supreme Court to determine that part of the motion following an in camera review of the allegedly privileged documents responsive to that request as limited by the Drilling Parties (*see generally Rawlins*, 108 AD3d at 1195; *Baliva v State Farm Mut. Auto. Ins. Co.*, 275 AD2d 1030, 1031 [4th Dept 2000]). Present— Centra, J.P., Peradotto, Lindley, NeMoyer and Troutman, JJ.