Cyprium Therapeutics, Inc. v Curia Global, Inc. (2023 NY Slip Op
51467(U))

[*1]

Cyprium Therapeutics, Inc. v Curia Global, Inc.

2023 NY Slip Op 51467(U) [81 Misc 3d 1238(A)]

Decided on February 27, 2023

Supreme Court, Albany County

Platkin, J.

Published by New York State Law Reporting
Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on February 27, 2023
Supreme Court, Albany County

Cyprium
Therapeutics, Inc., Petitioner,

against
Curia Global, Inc., Respondent.

Index No. 905902-22

DLA Piper LLP (US)
Attorneys for Petitioner
(Brett Ingerman, of
counsel)
6225 Smith Avenue
Baltimore, Maryland 21209
and
(Steven M. Rosato, of counsel)
1251 Avenue of the Americas
New
York, New York 10020
Nixon Peabody LLP
Attorneys for
Respondent
(Daniel J. Hurteau, of counsel)
677 Broadway, 10th Floor
Albany, New York 12207
and
(Richard H. Tilghman IV and
Kathleen Mallon, of counsel)
70 W. Madison St., Suite 5200
Chicago, Illinois
60602

Richard M. Platkin, J.

Pending before the Court is the application of respondent Curia Global, Inc.
("Curia") to permanently seal the record of this special proceeding pursuant to 22
NYCRR 216.1. Petitioner Cyprium Therapeutics, Inc. ("Cyprium") opposes the
application.
BACKGROUND
On August 4, 2022,
Cyprium commenced this special proceeding under CPLR 7502 (c), seeking a
preliminary injunction in aid of arbitration (see NYSCEF Doc No. 1 ["Petition"]).
Cyprium sought to enjoin Curia, a contract drug manufacturer, from terminating or
ceasing performance under a master services agreement (see id., Ex. 1 ["MSA"])
and two work orders (see id., Exs. 2-3 ["Work Orders"]).
The MSA and Work Orders obliged Curia to manufacture and deliver two batches of
Copper Histidinate, "a groundbreaking therapy developed by Cyprium to treat infants
born with a rare genetic disease known as Menkes disease (the 'Product'), in connection
with Cyprium's New Drug Application ('NDA') pending before the U.S. Food and Drug
Administration ('the FDA')" (Petition, ¶ 1). "Infants born with [Menkes] disease, if
untreated, presently have a median survival rate of just 16 months. There are currently no
FDA approved treatments for this disease" (id., ¶ 6).[FN1]

At the outset, Cyprium filed a proposed Order to Show Cause ("OTSC") bringing on
an application to seal the Petition (see NYSCEF Doc Nos. 2-4). Cyprium's
counsel explained that the MSA imposes a confidentiality obligation on the parties, and
Cyprium did not want to run afoul of that obligation by filing the MSA and Work
Orders, which are exhibits to the Petition, on a public court docket (see NYSCEF
Doc No. 3, ¶¶ 2-5). 
The Court signed the proposed OTSC, which included a temporary sealing order,
and gave the motion a return date of August 26, 2022 (see NYSCEF Doc No. 7).
In the meantime, the entire docket of this proceeding was temporarily sealed.
On August 26, 2022, Curia moved to adjourn the return date of Cyprium's sealing
motion and establish September 9, 2022 as the deadline for its contemplated sealing
motion (see NYSCEF Doc No. 77).
Curia then moved on September 9, 2022 for an order sealing 32 docket entries in
their entirety and substantially redacting 18 others (see NYSCEF Doc No. 81, pp.
3-4).
The documents that Curia proposed to seal included the relevant contracts: the MSA,
the Work Orders and a Quality Agreement (see Petition, ¶ 50 & Ex.
5).[FN2]
Curia also sought to seal letters, emails, meeting minutes and other documentary
evidence submitted in connection with the preliminary injunction application, and Curia
proposed extensive redactions to the Petition, legal briefs, fact affidavits and even the
transcripts of oral argument (see NYSCEF Doc No. 83).
Curia's sealing motion was supported by the affidavit of Anish Parikh, a global vice
president (see NYSCEF Doc No. 82 ["Parikh Aff."]). Parikh averred that the
requested sealing "is necessary to prevent the disclosure of Curia's proprietary,
confidential business information, the disclosure of which would seriously harm Curia's
business" (id., ¶ 6). Parikh further averred that "[d]isclosure of the details of
the MSA could compromise Curia's relationship with [] actual [*2]and potential clients" (id., ¶ 8).
In a Decision & Order dated September 12, 2022, the Court entered a
preliminary injunction in aid of arbitration. During the pendency of the arbitration, Curia
was enjoined from terminating the MSA, and Curia's purported termination of June 9,
2022 was stayed (see NYSCEF Doc No. 84 ["PI Decision"], pp. 32-33).
Cyprium responded to the sealing motion through a letter brief opposing Curia's
suggestion that the entire record "should be permanently sealed 'because arbitration is the
proper forum'" (NYSCEF Doc No. 87, p. 1, quoting NYSCEF Doc No. 81, p. 5).
Cyprium further argued that Curia's "claimed need for confidentiality is vastly
outweighed by the public's powerful interest in open court proceedings" (id.
[internal quotation marks and citation omitted]). Nonetheless, Cyprium "defer[red] to the
Court's judgment as to whether any aspect of Curia's sealing application is valid"
(id.).
Following review of Curia's proposal, the Court convened a conference with counsel
on October 21, 2022. While recognizing that there might be good cause for sealing
docket entries containing highly confidential business information, the Court expressed
concern that Curia's sealing proposal was vastly overbroad and would deprive the public
of a coherent record of the allegations, evidence and arguments relied upon by the Court
in granting the unusual remedy of an injunction in aid of arbitration. Given the important
countervailing interests asserted by Curia, however, the Court accorded Curia the
opportunity to submit a more narrowly drawn proposal.
Curia submitted a revised sealing proposal on November 18, 2022 (see
NYSCEF Doc Nos. 111-113). Under its new proposal, 30 docket entries would be sealed
entirely, including the MSA, Work Orders and Quality Agreement, and 42 other
documents would be redacted.
Curia wrote on November 28, 2022 to notify the Court "of new information that
makes maintaining confidentiality of paramount importance" (NYSCEF Doc No. 114).
Curia referred to a letter that Cyprium's chief executive wrote to affiliates of Curia,
threatening to embarrass Curia and its owners through "'a detailed description of Curia's .
. . illegal and unconscionable acts'" (id., p. 1 [emphasis omitted], quoting
NYSCEF Doc Nos. 115-116). 
By letter brief dated December 2, 2022, Cyprium stated that its "position continues to
be that no part of the record in this case should be [permanently] sealed or redacted"
(NYSCEF Doc No. 121, p. 1). Cyprium asserted that Curia's "revised proposal is equally
flawed," and Curia failed to meet its burden of showing compelling circumstances
warranting the sealing of the material that the Court relied upon in rendering the PI
Decision (id., p. 2). 
On December 21, 2022, Curia submitted a letter brief requesting, first and foremost,
that the Court seal the entire record of this proceeding because the matter
properly belongs in arbitration (see NYSCEF Doc No. 124 ["Reply"], pp. 2-3).
As a fallback, Curia contended that the Court should accept its original September 9,
2022 sealing proposal (see id., pp. 3-6). Finally, as a second-level fallback, Curia
asserted that if the Court is disinclined to seal the entire record or adopt Curia's
September 9, 2022 proposal, the Court should adopt its revised proposal of November
18, 2022 (see id., pp. 6-8). 
ANALYSIS
Under 22 NYCRR 216.1 (a),
court records may be sealed "upon a written finding of good cause." "In determining
whether good cause has been shown, the court shall consider the interests of the public as
well as of the parties" (id.).
"The statutory and common law of this State have long recognized that civil actions
and proceedings should be open to the public in order to ensure that they are conducted
efficiently, honestly, and fairly" (Matter of Brownstone, 191 AD2d 167, 168 [1st
Dept 1993]). "Inasmuch as confidentiality is the exception and not the rule, the party
seeking to seal court records has the burden to demonstrate compelling circumstances to
justify restricting public access" (Manufacturers & Traders Trust Co. v Client Server Direct,
Inc., 156 AD3d 1364, 1366 [4th Dept 2017] [internal quotation marks and
citation omitted]). 
Thus, the proponent of sealing must "overcome the broad presumption of public
entitlement to judicial proceedings and court records" (Norddeutsche Landesbank
Girozentrale v Tilton, 165 AD3d 447, 448 [1st Dept 2018]) and demonstrate
that "public access . . . will likely result in harm to a compelling interest" (Mancheski v Gabelli Group Capital
Partners, 39 AD3d 499, 502 [2d Dept 2007]). 
After "weigh[ing] the competing interests of the public and the parties," a sealing
order may be entered "only in the prudent exercise of the court's discretion" (O'Reilly v Klar, 167 AD3d
919, 920 [2d Dept 2018]), such as where "the need for secrecy outweighs the
public's right to access" (Applehead Pictures LLC v Perelman, 80 AD3d 181,
191-192 [1st Dept 2010]; see Matter of R.R., 153 Misc 2d 747, 748-749 [Sur Ct,
Rensselaer County 1992] [Ceresia, Jr., S.]). But "neither the potential for embarrassment
or damage to reputation, nor the general desire for privacy, constitutes good cause to seal
court records" (Mosallem v
Berenson, 76 AD3d 345, 351 [1st Dept 2010]).
A. Sealing of Entire Record
Despite having moved for the sealing of
"certain court records" (NYSCEF Doc No. 80 [capitalization omitted]) and specifically
identified those court records in its memorandum of law and moving affidavit
(see NYSCEF Doc No. 81, pp. 3-4, 14; Parikh Aff., ¶¶ 9-11), Curia
now contends that the entire record of this proceeding should be sealed because the
matter properly belongs in arbitration.
Curia supports its argument with cases from Supreme Court, New York County in
which the record of a CPLR article 75 proceeding involving an arbitral dispute was
sealed, "since the matter properly belongs in arbitration . . . [and] the material filed with
the court belongs not in the court, but in the files of the arbitrating body" (Feffer v
Goodkind, Wechsler, Labaton & Rudoff, 152 Misc 2d 812, 815 [Sup Ct, NY
County 1991] [compelling arbitration], affd 183 AD2d 678 [1st Dept 1992]; see JetBlue Airways Corp. v
Stephenson, 31 Misc 3d 1241[A], 2010 NY Slip Op 52405[U], *7 [Sup Ct, NY
County 2010] [remanding to arbitration], affd 88 AD3d 567 [1st Dept 2011]; Matter of Cohen v S.A.C. Capital
Advisors LLC, 11 Misc 3d 1054[A], 2006 NY Slip Op 50205[U], *9 [Sup Ct,
NY County 2006] [declining to consolidate pending arbitral proceedings]).
This proceeding, however, is unlike the authorities relied upon by Curia, which
involved questions of arbitrability. In Feffer, for example, the court sealed the
record of a special proceeding to compel arbitration of a partnership dispute where the
dispute was arbitral "[w]ithout question . . . and where the material [to be sealed] may
have been inserted into court documents for the sole purpose of extracting a settlement of
the action" (152 Misc 2d at 814-815). Likewise, JetBlue involved a dispute
concerning the applicability of the Federal Arbitration Act ("FAA") to the employment
contracts of airline pilots in the context of an application to stay arbitration (see
2010 NY Slip Op 52405[U], *1), and Cohen addressed the [*3]interplay between the FAA and general choice-of-law
provisions in declining to consolidate arbitral proceedings (see 2006 NY Slip Op
50205[U], *1).
The arbitrability of the parties' disputes under the MSA and Work Orders, in
contrast, has never been in question. The focus of this proceeding always has been on
Cyprium's motion for a judicial injunction governing the parties' business dealings during
the pendency of the arbitral process, a remedy expressly authorized by CPLR 7502 (c)
and not foreclosed by the MSA (see PI Decision, p. 11).
Cyprium's application for a preliminary injunction in aid of arbitration obliged the
Court to adjudicate (1) whether the requested injunction was necessary to avert imminent
and irreparable harm to Cyprium, (2) whether the injunction was necessary to prevent an
eventual arbitral award in Cyprium's favor from being rendered ineffectual, (3) whether
Cyprium was likely to obtain a favorable arbitral award, and (4) whether the equities of
the parties and the general public supported the grant of injunctive relief (see id.,
pp. 12-29).
After reviewing the allegations, arguments and evidence submitted by the parties,
including the contracts, legal briefs, fact affidavits, emails, letters, business records and
transcripts of court proceedings, the Court found that Cyprium had established these four
essential elements. Accordingly, the Court entered an injunction on September 12, 2022
enjoining Curia from terminating the MSA during the pendency of the arbitration (see
id., p. 33).
None of the cases cited by Curia involved a judicial injunction governing the
primary conduct of parties outside of the arbitral process. Issuance of such an injunction
was a matter that properly belonged in the Court (see id., pp. 9-12),[FN3]
and the documents that were filed with the Court and relied upon by the Court are court
records, not records of the arbitrator (cf. Feffer, 152 Misc 2d at
815).[FN4]

The authorities relied upon by Curia are further distinguishable because the sealed
materials in those cases did not implicate matters of public interest (see id. at
815-816; JetBlue, 2010 NY Slip Op 52405[U], *7 ["no countervailing public
interest that would be furthered by . . . disclosure"]; accord Cohen, 2006 NY Slip
Op 50205[U], *9). 
In contrast, this proceeding involves an injunction pertaining to the manufacture and
commercialization of a lifesaving drug for babies and infants, which clearly implicates
the public interest. Indeed, the Court was obliged to discern and give effect to the public
interest in determining whether the equities tipped in favor of an injunction (see
PI Decision, p. 26), and each side sought to support its litigation positions by
reference to the public interest (see id., p. 29; see also NYSCEF Doc No.
9, pp. 19-21; Doc No. 14, pp. 23-24; Doc No. 65, p. 10).
The Court therefore finds that there is a strong public interest in access to the
allegations, evidence and arguments upon which the Court enjoined Curia from
terminating the MSA and Work Orders during the pendency of the parties' arbitration
(see Danco Labs v Chemical Works of Gedeon Richter, 274 AD2d 1, 7 [1st Dept
2000] ["The public interest in openness is particularly important on matters of public
concern, even if the issues arise in the context of a [*4]private dispute."]; see also Tong v S.A.C. Capital Mgt., LLC, 52 AD3d 386,
387 [1st Dept 2008] [vacating sealing order in proceeding to compel arbitration, as "[t]he
factors relied upon by the (lower) court in sealing the record (did) not outweigh the
public's right of access thereto"]).
Finally, the Court is unpersuaded by Curia's contention that sealing is needed to
prevent Cyprium from "embarrassing Curia into a settlement" by "misrepresent[ing] . . .
the substance of [the PI Decision]" and "falsely accus[ing] Curia of violating [the
injunction]" (NYSCEF Doc No. 114; see Reply, pp. 1-2). Opening the record is
the best way to prevent mischaracterization and allow informed judgments to be
made.
Accordingly, even assuming that Curia's request for a wholesale sealing of the record
is properly before the Court, Curia has failed to overcome the presumption of open
access and demonstrate good cause for such relief.
B. Curia's Original Proposal of September 9, 2022
Curia filed its
sealing motion on September 9, 2022, following briefing and oral argument on the
injunction motion, but immediately before issuance of the PI Decision. At that time, the
docket contained 79 entries, and Curia proposed to seal 32 of them entirely and
substantially redact another 18 entries (see NYSCEF Doc No. 81 ["Sealing
Mem"], pp. 3-4).
To protect the commercial terms of the parties' agreements, Curia proposed to seal
the MSA, the Work Orders and Quality Agreement entirely, and redact any discussion of
the terms of those agreements from the parties' briefing, fact affidavits and the argument
transcripts (see id., pp. 5-6). Curia cited the confidentiality obligations prescribed
by Section 8 of the MSA, as well as the parties' agreement to arbitrate any disputes
arising out of the MSA (see id., p. 6). Curia further argued that disclosure of the
MSA and Quality Agreement could disrupt customer relationships and cause it to sustain
competitive disadvantage (see id.).
To protect the details of the parties' business relationship, Curia proposed to seal or
substantially redact the Petition, the briefs, the fact affidavits, and documentary evidence
concerning the parties' disputes (see id., pp. 6-7). This includes a complete
sealing of the Work Orders, the Invoices, meeting minutes, emails between Cyprium and
Curia pertaining to the Work Orders, information about Curia's manufacturing facility
and settlement communications (see id., p. 10). Curia contends that the sealing of
such material is warranted based on (1) the broad confidentiality obligations imposed by
the MSA, (2) the parties' agreement to arbitrate, (3) the likelihood that disclosure would
jeopardize Curia's client relationships and put the company at a competitive
disadvantage, and (4) the lack of any public interest in the information sought to be
sealed (see id., pp. 10-13).
Curia also seeks to seal documents pertaining to arbitration, such as its demand for
arbitration and Cyprium's counterclaims in arbitration, based on the parties' agreement to
arbitrate (see id., pp. 13-14).
As the Court articulated at the October 21, 2022 conference, Curia's sealing proposal
inappropriately would deny access to key materials underlying this proceeding,
including: the pertinent allegations of the Petition; the contractual language upon which
those allegations were based; the fact affidavits bearing on all aspects of Cyprium's
injunction application; the letters emails, meeting minutes and other documentary
evidence relied upon by the parties to support or oppose the application; the arguments
made by the parties in their briefs and moving affirmations; and even portions of oral
argument held in open court.
The Court relied on these allegations, evidence and arguments in determining issues
bearing on Cyprium's entitlement to injunctive relief, including: (i) the consequences to
the parties and the public if Curia's purported termination of the MSA remained in effect;
(ii) whether Cyprium was likely to persuade the arbitrator that it disputed the Invoices, an
issue that implicated other ongoing disputes between the parties, including their
fundamental disagreement as to whether the Work Orders required Curia to produce
"commercial batches" of the Product; (iii) whether Cyprium was likely to persuade the
arbitrator that Curia wrongfully terminated the MSA for improper "regulatory
correspondence," an issue that called for consideration of evidence regarding the
inspection-readiness of Curia's manufacturing facility and the representations made by
Cyprium to the FDA regarding the facility; and (iv) the harms Curia would suffer if
ordered to manufacture the Product, some of which directly implicated its manufacturing
facility and business operations.
As Cyprium correctly observes, the sealing of documents relied upon by a court in
reaching its decision should be reserved for only the most compelling circumstances (see Matter of Gliklad v
Deripaska, 185 AD3d 512, 513 [1st Dept 2020]), and Curia has failed to
establish that this is such a case.
"[C]onclusory claims of the need for confidentiality . . . are insufficient to seal a
record" (Matter of Hofmann, 284 AD2d 92, 94 [1st Dept 2001], citing George F.
Carpinello, Public Access To Court Records In Civil Proceedings: The New York
Approach, 54 Alb L Rev 93, 108-110 [1989]; accord Heng Ren Silk Rd. Invs. LLC v Duff & Phelps,
LLC, 203 AD3d 659, 660 [1st Dept 2022]), but Curia offers little more than that
in seeking to establish that public access to the full record of this proceeding would
"likely result in harm to a compelling interest" (Mancheski, 39 AD3d at
502).
Apart from its repeated refrain that sealing is warranted "because arbitration is the
proper forum" (Sealing Mem, p. 5), and its reliance on the confidentiality provisions of
the MSA, which are not determinative in assessing the public's right to view court
records (see Mosallem, 76 AD3d at 350; Eusini v Pioneer Elecs. [USA], Inc., 29 AD3d 623, 626 [2d
Dept 2006]), the only evidence submitted by Curia is the Parikh Affidavit.
But the Parikh Affidavit is cast in the most conclusory and general terms, merely
reciting that: disclosure of "Curia's proprietary, confidential business information . . .
would seriously harm [its] business" (Parikh Aff., ¶ 6); disclosure of such
information "could compromise Curia's relationship with its actual and potential clients,
putting it at a competitive disadvantage" (id., ¶ 8); and disclosure of Curia's
operations, work and pricing, which is maintained in confidence, would "jeopardize . . .
relationships with its actual and potential customers" (id., ¶ 9), "harm [its]
competitive advantage and disrupt its business relationships" (id., ¶
11).[FN5]

There simply is no evidence before the Court as to how a competitor might use the
information that Curia seeks to withhold or what tangible injury to Curia is likely to
result from disclosure (see RDI Corp. v Charter Communications, Inc., 2022 WL
604723, *2, 2022 US Dist LEXIS 35807, *5 [SD NY, Mar. 1, 2022, 19 Civ 10929
(CM)]). Nor is there evidence as to the nature or extent of the harm that disclosure might
cause to Curia's relationships with actual or [*5]potential
customers.
On the other hand, "the public has a powerful interest in open court proceedings"
(Mosallem, 76 AD3d at 350), and the extensive sealing and redactions proposed
by Curia would deny access to key portions of the allegations, arguments and evidence
relied upon by the Court in this proceeding. Curia claims that its proposal would still
allow "the public . . . to know . . . the nature of the claims and defenses being asserted"
(Sealing Mem., p. 9), but the Court finds that the extensive sealing and redactions
proposed by Curia would render the docket unintelligible and inappropriately deprive the
public of a coherent record of this litigation.
Accordingly, after weighing of the interests of the parties and the public, the Court
finds, in the exercise of discretion, that Curia has failed to overcome the broad
presumption of public entitlement to the record of this judicial proceeding, so as to
warrant adoption of its September 9, 2022 sealing proposal.
C. Curia's Revised Proposal of November 18, 2022
Curia was given
the opportunity to present a revised sealing proposal, which it submitted on November
18, 2022 (see NYSCEF Doc No. 111 ["Revised Proposal"]).[FN6]

Curia requests that a total of thirty (30) docket entries be sealed in their entirety,
"includ[ing] the MSA, work orders, invoices, meeting minutes, arbitration filings, and
select email correspondence between the parties" (id., p. 1). 
Curia also requests redactions to 42 other docket entries "focused on direct reference
to MSA provisions, quoted language from sealed emails, reference to regulatory filings,
pricing, production methods or other specific processes, and settlement negotiations. Of
particular note, Dkt. No. 1 is the Verified Petition, which includes seven exhibits. Curia
requests that, of those seven exhibits, Exhibits 1 (the MSA), 2 and 3 (the Work Orders),
and 5 (the Quality Agreement) be redacted in full" (id.).[FN7]

The Court finds that the Revised Proposal does not cure the infirmities in the original
proposal and inappropriately would deny access to important arguments and evidence
that the Court relied upon in granting extraordinary relief in a matter affected with the
public interest. For example, Curia would redact the critical language of the Work Orders
regarding the nature of the manufacturing work that Curia undertook to perform, as well
as the contractual language and much of the evidence bearing on the Court's
determination that the arbitrator was unlikely to [*6]uphold Curia's purported termination insofar as it was
based on improper regulatory communications with the FDA.
To seal such material, Curia was obliged to demonstrate a substantial likelihood of
competitive harm or damage to customer relationships. For the reasons stated above, the
Court finds the Parikh Affidavit's generic and conclusory attestations of competitive
harm and potential damage to customer relationships to be insufficient to warrant the
requested relief. Precisely the same boilerplate invocations of competitive harm and
damage to customer relationships could be made in many of the disputes litigated in the
Commercial Division, yet sealing is the exception and not the rule, reserved only for the
most compelling circumstances.
Finally, the Court has considered whether any discrete elements of Curia's revised
sealing proposal should be adopted, but finds pruning to be infeasible and unwarranted.
Curia already has been accorded the opportunity to prune its overbroad proposal of
September 9, 2022 in response to the Court's concerns, and the intricate and voluminous
nature of the docket would make pruning an "onerous and unwarranted burden on the
court" (Eusini, 29 AD3d at 635).[FN8]
More fundamentally, given that the Parikh Affidavit paints all of Curia's confidential
business and customer information with the same broad brush, there is no record basis
upon which the Court could attempt to craft a more limited sealing order.
The Court therefore finds, in the exercise of discretion, that the provisional sealing of
the record should be lifted in its entirety and the full record of this proceeding opened to
the public. However, at Curia's request, the Court will delay the effectiveness of its
unsealing order for a brief period to allow Curia to pursue its appellate remedies if so
inclined (see Reply, p. 8).
CONCLUSION
Based on the foregoing, it
is
ORDERED that Curia's sealing motion (Motion #6) is denied; and it is
further
ORDERED that Curia's motion for an extension of time (Motion #5) is
granted, nunc pro tunc; and it is further
ORDERED that Cyprium's sealing motion (Motion #1) is denied; and
finally it is
ORDERED that, as of March 20, 2023, the docket of this
proceeding shall be unsealed and open to the public.
This constitutes the Decision & Order of the Court, the original of which is
being uploaded to NYSCEF for electronic entry by the Albany County Clerk. Upon such
entry, counsel for Cyprium shall promptly serve notice of entry on all parties entitled
thereto.
Dated: February 27, 2023
Albany, New York
RICHARD PLATKIN
A.J.S.C.
[*7]Papers Considered:
NYSCEF Doc Nos. 1, 3-4, 7, 77-78,
80-83, 87, 111-118, 121, 124-125.[FN9]

Footnotes

Footnote 1:Additional background
is set forth in the Court's prior decisions and will not be repeated here.

Footnote 2:The Quality Agreement
allegedly obliged Curia "to support Cyprium's [FDA] filings and activities" and
"maintain inspection readiness" at its Camarillo manufacturing facility (Petition, ¶
50).

Footnote 3:Curia did not appeal the
denial of its cross motion to compel Cyprium to arbitrate its application for injunctive
relief.
Footnote 4:Indeed, if Curia's request
to seal the entire docket were granted, even the PI Decision would be sealed. But secret
injunctions are not part of our system of civil justice.

Footnote 5:The arguments of
Curia's counsel (see e.g. Sealing Mem, pp. 10-13) are, of course, devoid of
probative value (see generally Zuckerman v City of New York, 49 NY2d 557,
563 [1980]; Rossi v C.C.O. Equip., 200 AD2d 933, 933 [3d Dept 1994], lv
denied 84 NY2d 802 [1994]).

Footnote 6:Curia takes the position
that the Revised Proposal is "not restrictive enough to protect the interests set forth in its
September 9, 2022 submission," which "included the MSA, Work Orders, Invoices,
Meeting Minutes, arbitration filings, and select email correspondence between Curia and
Cyprium personnel related to regulatory submissions, commercial readiness, product
testing specifications, and commercial terms of the parties' agreements" (Reply, p. 6).
And despite having moved for an order sealing "certain" records, Curia maintains, first
and foremost, that the entire record of this proceeding should be sealed because the
matter belongs in arbitration (see id., p. 2).
Footnote 7:In other words, the
Revised Proposal is said to target "references to specific upgrades to the Camarillo
facility, quoted language from emails sought to be sealed, direct reference to MSA
provisions, reference to unauthorized regulatory filings, pricing information, production
methods or specific testing regimes, and details of settlement negotiations involving
proposed commercial terms" (Reply, p. 6).

Footnote 8:Even redaction issues
that might appear straightforward, like the price that Curia charged Cyprium for the
manufacturing work, present difficulty. The public may have a limited interest in the
specific prices that Curia charged, but Cyprium relied on the pricing terms of the Work
Orders and historical pricing levels to support one of its central arguments in the case:
that the Work Orders called for Curia to manufacture "commercial batches" of Product.
And that argument and the supporting evidence, including pricing information, is woven
throughout the legal memoranda, fact affidavits, oral argument transcripts and court
decisions.

Footnote 9:The Court takes judicial
notice of the prior proceedings and filings in this matter (see Matter of Shirley v Shirley,
101 AD3d 1391, 1394 [3d Dept 2012]; Casson v Casson, 107 AD2d 342,
344 [1st Dept 1985], appeal dismissed 65 NY2d 637 [1985]).